***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Both plaintiff and defendants are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. At all times relevant to this matter, an employer-employee relationship existed between defendant-employer and plaintiff.
5. The date of the injury which is the subject of this claim is August 12, 1997.
 ***********
Based upon the findings of fact found by the Deputy Commissioner and the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On August 12, 1997, plaintiff was employed as a ground maintenance worker for defendant-employer in Concord, North Carolina when he sustained an injury by accident arising out of and in the course and scope of his employment with defendant-employer. While riding at approximately forty miles per hour as a passenger in a golf cart, plaintiff's right leg was injured when it struck a concrete pillar.
2. As a result of the August 12, 1997 injury, plaintiff was admitted to University Hospital where x-rays of his right leg revealed comminuted transverse fractures of the distal third of the tibia and fibula. Consequently, plaintiff immediately underwent closed reduction surgery and splinting of the tibia and fibula fractures by John S. Gaul, M.D. On August 14, 1998, plaintiff underwent further closed reduction surgery and intramedullary nailing of the tibial shaft fracture by Matthew David Ohl, M.D.
3. On August 14, 1997, a Form 19 was completed by defendant-employer. Thereafter, on August 22, 1997, defendant-employer completed a Form 22 Wage Chart showing plaintiff's earnings of $7,261 over a period of 142 days (or 20.285714 weeks). However, the Form 22 was not provided to plaintiff, who at that time was unrepresented.
4. On August 22, 1997, plaintiff presented for his first postoperative follow-up visit with Dr. Ohl. Plaintiff's staples were removed and he was placed in a walker boot. He was written out of work for 6 weeks, as no light duty was available for him at work.
5. On September 3, 1997, defendant-carrier admitted liability for plaintiff's injuries and executed a Form 21 agreement, wherein it agreed to pay plaintiff temporary total disability benefits beginning August 22, 1997 at a rate of $213.33 per week, based on an average weekly wage of $320.00. Plaintiff who remained unrepresented executed the Form 21 agreement, which the Commission approved on March 2, 1998.
6. The Form 21 agreement included the standard language on line 5 stating that the average weekly wage was "subject to verification unless otherwise agreed upon on line 9 below" and line 9 of the Form 21 agreement was left blank.
7. The average weekly wage on the Form 21 agreement is inconsistent with plaintiff's earnings listed on the Form 22 Wage Chart.
8. On October 17, 1997, Dr. Ohl found a lack of mobility and dorsiflexion of plaintiff's foot. X-rays revealed early callus formation with anatomic position on the lateral view and slight apex medial angulation on the medial view of plaintiff's foot. Dr. Ohl was concerned about peroneal nerve weakness and recommended that plaintiff return in two weeks to discuss and schedule outpatient surgery for dynamization of the distal screw to allow plaintiff to compress down on the fracture. However, plaintiff did not return to Dr. Ohl before moving to Ohio in December 1997.
9. After moving to Ohio, plaintiff was examined there on December 4, 1997 by Kee P. Wong, M.D. for ongoing right leg pain. Dr. Wong diagnosed plaintiff with a peroneal nerve injury and a delayed union of the left tibia fracture and ordered an EMG and nerve conduction test. On December 18, 1997, plaintiff was seen at Robinson Memorial Hospital where he underwent nerve conduction studies and an electromyogram, which revealed neuropathic abnormalities of the peroneal nerve and the posterior tibialis nerve of plaintiff's right leg.
10. On February 11, 1998, Dr. Wong removed plaintiff's distal locking screw of the right tibia. Thereafter, on February 21, 1998, Dr. Wong found that plaintiff's surgical wounds had healed and plaintiff was to return in one month to evaluate the need for further surgery. Plaintiff was seen for follow-up on March 5, 1998 and reported no pain. Dr. Wong felt further monitoring of healing was necessary to determine the need for further surgery. Plaintiff returned on April 14, 1998 without complaints of pain but continued to have very little ankle motion and minimal dorsiflexion. X-rays revealed proper healing with a disappearing fracture line. Dr. Wong recommended stretching exercises and that plaintiff begin to look for work with the restrictions that he not constantly stand or walk but that the activity level increase with plaintiff's progress.
11. Plaintiff was further seen for follow-up on May 28, 1998 and July 28, 1998. On September 4, 1998, Dr. Wong filled out documents sent by Concentra Managed Care concerning vocational rehabilitation and work restrictions.
12. On January 25, 1999, Dr. Wong found plaintiff had reached maximum medical improvement with restrictions of no repetitive lifting and no lifting over 30 pounds with standing for up to four hours and sitting for up to eight hours. Dr. Wong recommended that plaintiff undergo vocational rehabilitation.
13. After plaintiff was released to return to work in January 1999, he attempted to find work within his restrictions in Ohio. However, plaintiff was unsuccessful in Ohio. Therefore, plaintiff moved back to North Carolina to continue his employment search. In August 1999, a vocational rehabilitation professional was assigned to assist plaintiff in his job search. However, the rehabilitation professional was unable to locate employment for plaintiff.
14. On October 15, 1999, plaintiff returned to see Dr. Ohl who found that plaintiff had a healed fracture with continuing peroneal nerve palsy, a permanent peroneal nerve lesion to the foot and ankle and a lack of motion and dorsiflexion. As a result, Dr. Ohl assigned a 35% rating to plaintiff's foot. Dr. Ohl indicated that plaintiff could return to work with restrictions of no prolonged walking greater than 1 hour without a sitting break and lifting restrictions of approximately 45 pounds.
15. In December 1999, plaintiff again left North Carolina and returned to Ohio. Defendant-carrier again assigned a vocational rehabilitation professional to assist plaintiff in his job search. This individual was also unsuccessful in locating work for plaintiff.
16. Plaintiff eventually found work in February 2000. On February 6, 2000, plaintiff began working at approximately $5.25 per hour at an Ohio plastics plant, Four Seasons. Defendants did not pay plaintiff any temporary partial disability benefits for his reduced earnings nor did plaintiff request temporary partial benefits.
17. Plaintiff last worked at the Ohio manufacturing plant on March 17, 2000 in order to return to North Carolina where on April 1, 2000, he began working for an auto detailing shop at wages comparable to his pre-injury earnings.
18. From August 22, 1997 through February 10, 2000, plaintiff received temporary total disability benefits in the amount of $213.37 per week in accordance with the approved Form 21 agreement, which listed plaintiff's average weekly wage as $320.00, yielding a weekly compensation rate of $213.33.
19. At the time the Form 21 agreement was completed by defendant-carrier, the Form 22 Wage Chart had been completed by defendant-employer and should have been available to defendant-carrier.
20. The Form 22 Wage Chart shows that plaintiff's correct average weekly wage is $357.96, which yields a weekly compensation rate of $238.64. However, defendant-carrier did not adjust the average weekly wage on the Form 21 agreement upon verification of plaintiff's earnings.
21. Based on the Form 21 agreement, plaintiff's restrictions, the recommendation that plaintiff undergo further vocational rehabilitation to obtain work within his restrictions and plaintiff's unsuccessful attempts to obtain employment, plaintiff remained unable to earn any wages in any employment until February 6, 2000 when plaintiff found suitable employment available within plaintiff's restrictions at a lesser average weekly wage.
22. Defendants did not provide evidence of suitable employment available for plaintiff and two vocational rehabilitation professionals in two different states could not locate a job for plaintiff within his restrictions.
23. Plaintiff made no election to receive benefits under § 97-30 in lieu of his benefits under § 97-31. Based on the greater weight of the medical evidence, plaintiff reached maximum medical improvement on January 25, 1999, as found by Dr. Wong.
24. Plaintiff is presently experiencing problems with his injured right leg.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of his admittedly compensable injury by accident, plaintiff was temporarily totally disabled from August 13, 1997 until February 6, 2000. N.C.G.S. § 97-29.
2. The average weekly wage on the Form 21 agreement was not properly calculated by any of the methods prescribed in N.C.G.S. § 97-2(5) and was subject to verification per the Form 21 agreement. Therefore, the average weekly wage as listed on the Form 21 agreement is not binding on the parties. Plaintiff's correct average weekly wage is $357.96, yielding a weekly compensation rate of $238.64. Plaintiff is entitled to payment of the difference of $25.31 for all temporary total disability which has been paid to date, subject to a reasonable attorney's fee. N.C.G.S. § 97-2(5).
3. Subject to a reasonable attorney's fee, plaintiff is entitled to temporary total disability benefits during the waiting period from August 13, 1997 through August 21, 1997, as plaintiff was disabled for more than 21 days. N.C.G.S. § 97-28.
4. Plaintiff reached maximum medical improvement and his healing period ended on January 25, 1999. N.C.G.S. § 97-31.
5. Plaintiff has not made an election of benefits and is entitled to elect the more munificent remedy. Pursuant to Section 97-31(14), plaintiff sustained a 35% permanent partial impairment to his right foot entitling him to permanent partial disability compensation beginning January 25, 1999 at the rate of $238.64 per week for 50.4 weeks, subject to a reasonable attorney's fee. N.C.G.S. § 97-31; See Moretz v.Richards Associates, 315 N.C. 539, 342 S.E.2d 844 (186); Arnold v.Wal-Mart Stores, ___ N.C. App. ___, 571 S.E.2d 888 (2002); Knight v.Wal-Mart Stores, 149 N.C. App. 1, 562 S.E.2d 434 (2002). Pursuant to §§ 97-29 and 97-30, plaintiff would be entitled to total temporary disability benefits until he returned to work on February 6, 2000, and temporary partial disability benefits from February 6, 2000, through April 1, 2000, when plaintiff returned to employment at or greater than his pre-injury wage. Because the combined benefits under §§ 97-29 and97-30 are greater than the benefits under § 97-31, plaintiff is entitled to collect these benefits; however, under the circumstances of this case plaintiff is not entitled to collect § 97-31 benefits in addition to the § 97-29 and § 97-30 benefits. See Arnold v.Wal-Mart Stores, ___ N.C. App. ___, 571 S.E.2d 888 (2002); Knight v.Wal-Mart Stores, 149 N.C. App. 1, 562 S.E.2d 434 (2002). Therefore, plaintiff is entitled to recover total disability benefits at the rate of $238.64 from August 13, 1997 to February 6, 2000. N.C.G.S. § 97-29. And, plaintiff is entitled to recover 66-2/3% of the difference between his pre-injury average weekly wage of $357.96 and his post-injury wages earned from February 6, 2000 through April 1, 2000. N.C.G.S. § 97-30. To the extent that defendants have made payment to plaintiff for weekly compensation benefits, they are entitled to a credit for the sums paid toward the Section 97-29 and Section 97-30 benefits that are owed.
6. Subject to the limitations of N.C.G.S. § 97-25.1, plaintiff is entitled to have defendants provide all reasonably necessary medical compensation arising from this injury by accident, including all treatment for his leg and foot for so long as such treatment tends to effect a cure, provide relief or lessen the period of plaintiff's disability. N.C.G.S. §§ 97-25.1; 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms, with modification, the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff compensation at the rate of $238.64 per week for the temporary total disability sustained for the period August 13, 1997 through August 21, 1997 for the previously unpaid waiting period. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fees allowed below.
2. Defendants shall pay to plaintiff compensation in the amount of $25.31 per week, representing the underpayment of temporary total disability benefits to plaintiff, for the period August 22, 1997 through February 6, 2000. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fees allowed below.
3. Defendants shall pay plaintiff compensation at the rate of 66-2/3% of the difference between his pre-injury average weekly wage of $357.96 and his post-injury wages earned during the period of February 6, 2000 and April 1, 2000. This compensation has accrued and shall be paid in a lump sum, subject to the attorney's fees allowed below.
4. Defendants are entitled to a credit for weekly compensation paid to plaintiff to be applied to the sums awarded above to avoid a double recovery to plaintiff.
5. Subject to the limitations of N.C.G.S. § 97-25.1, defendants shall pay for all reasonably necessary medical expenses incurred as a result of plaintiff's injury by accident, for so long as such treatment tends to effect a cure, provide relief or lessens plaintiff's period of disability. Such treatment includes, but is not limited to, the problems plaintiff is experiencing with his leg brace.
6. Defendants shall pay directly to plaintiff's counsel, attorney's fees in the amount of 25% of the sum due plaintiff awarded in paragraphs 1, 2, 3, and 4, above.
7. Defendants shall pay the costs due the Commission.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER